641 So.2d 54 (1994)
John Christopher MARQUARD, Appellant,
v.
STATE of Florida, Appellee.
No. 81341.
Supreme Court of Florida.
June 9, 1994.
Rehearing Denied August 23, 1994.
*55 James B. Gibson, Public Defender and George D.E. Burden, Asst. Public Defender, Daytona Beach, for appellant.
Robert A. Butterworth, Atty. Gen. and Margene A. Roper, Asst. Atty. Gen., Daytona Beach, for appellee.
SHAW, Justice.
We have on appeal the judgment and sentence of the trial court imposing the death penalty upon John Christopher Marquard. We have jurisdiction. Art. V, § 3(b)(1), Fla. Const. We affirm.
John Marquard, Mike Abshire, and the victim, Stacey Willets, decided to move from North Carolina to Florida in June 1991 using Stacey's car and sharing expenses. Prior to leaving, Marquard and Abshire discussed killing Stacey for her car and money, and during a stop in South Carolina Marquard told Abshire that he was going to kill her because he was tired of arguing with her. In St. Augustine, Marquard and Abshire formulated a plot to kill Stacey that night after luring her into the woods.
Marquard and Abshire invited Stacey to attend a party, drove her to a deserted area, and walked her into the woods. Marquard grabbed her from behind, stabbed her, threw her to the ground, and sat on her back. She was still breathing, so Marquard held her head under the rainwater that had accumulated in a puddle until she stopped breathing. When her body convulsed, he held her head underwater again. Abshire then stabbed her and the two tried to decapitate her. Marquard was arrested and confessed, saying he remembered walking into the woods with Stacey and standing over her body with a *56 knife in hand. Abshire testified at trial, giving a detailed account of the murder.
Marquard was convicted of first-degree murder and armed robbery. The State put on a single witness to establish aggravation during the penalty phase  a parole officer who testified that Marquard was on parole in North Carolina at the time of the killing. Marquard called Dr. Harry Krop to establish mitigation, and Dr. Krop testified extensively concerning Marquard's deprived childhood and present psychological state. The State put on its own mental health expert, Dr. Merwin, in rebuttal. The jury recommended death by a twelve-to-zero vote, and the court imposed death, finding four aggravating circumstances[1] and a number of nonstatutory mitigating factors.[2] The court imposed a consecutive life term for the armed robbery conviction. Marquard appeals his convictions and death sentence, raising twelve issues.[3]
Marquard first claims that the trial court erred in excusing a death-qualified venireperson, Mr. Robinson, for cause. Marquard, however, overlooks the following exchange at voir dire:
MR. CANAN [prosecutor]: Okay. Now, I put you in a box here because let's say there was sufficient proof for you to recommend death, but you really are opposed to it. What do you think you would do?
A VENIREPERSON [Mr. Robinson]: I don't know. I think I wouldn't impose death.
MR. CANAN: Okay. So no matter what the judge said to you, no matter what the evidence was, I think what you're telling me, and correct me if I'm wrong, that you would not and could not vote for the death penalty, no matter what the circumstances?
A VENIREPERSON: That's right.
Mr. Robinson was never rehabilitated after this dialogue. The court had ample reason to excuse him. Wainwright v. Witt, 469 U.S. 412, 424, 105 S.Ct. 844, 852, 83 L.Ed.2d 841 (1985) (the proper inquiry is whether the juror's views would "prevent or substantially impair the performance of his duties as a juror in accordance with his instructions and his oath"). We find no error.
After being taken into custody, Marquard consented to a search of his room and police recovered several knives and a pair of camouflage pants that were later introduced at trial. Marquard claims that his consent was involuntary because he had been in custody several hours when it was given and he was not free to leave. The record, however, shows that Marquard had been in custody for only a few hours, had been read his rights, *57 signed a written rights form, gave written permission for the search, and even told police where to look for certain items. No coercive police tactics were used. Competent substantial evidence supports the trial court's finding that the consent to search was voluntary. United States v. Mendenhall, 446 U.S. 544, 100 S.Ct. 1870, 64 L.Ed.2d 497 (1980). We find no error.
Abshire testified during the guilt phase about conversations he and Marquard had wherein they discussed tactics for committing "silent kills":
Q. [prosecutor]: Okay. Had you ever talked with Mr. Marquard about how to kill somebody with a knife?
A. [Abshire]: Yes, sir.
Q. What type things would you say to each other?
... .
A. Talked about what knife's used different ways, different methods, different places in  you know, on the body to use the knife, the different ways, how to make silent kills.
Q. And what's a "silent kill"?
A. That's ... like in the military, it's taking out a sentry for a quiet  there's no sound, usually like, you know, cutting the throat or straight, you know, like knifing, you know, straight in, that type of deal (demonstrating).
Q. How about did you ever talk about how to stab someone near or around the heart?
A. Yes sir. I'm ... in between  I'm not sure which rib it is; but, you know, like from the rear, you can go right up in and go into the heart and lung and, from the front, the same way.
Q. Now, these are things y'all had talked about?
A. Yes, sir. We read about them in like Soldier of Fortune magazine and countless novels.
Marquard contends this was irrelevant similar fact evidence showing bad character.
Evidence showing familiarity with, or proficiency in, martial arts or military tactics is not by itself evidence of bad character, nor is it similar fact evidence of another crime. We note that other evidence adduced at trial showed that the victim was taken by surprise from behind and stabbed in the neck area and between the fifth and sixth ribs. Marquard's proficiency in committing a crime in precisely this fashion was relevant. Cf. Medina v. State, 466 So.2d 1046, 1048-49 (Fla. 1985) ("Similar fact evidence is not admissible if it goes only to show a defendant's bad character or propensity. If, however, such evidence is relevant for any other purpose, it is admissible."). We find no abuse of discretion.
Marquard claims that the court erred in denying his motion for judgment of acquittal on the armed robbery count because there was insufficient evidence to support this charge. Prior to leaving North Carolina, however, Marquard and Abshire discussed killing Stacey for her car and money. Immediately after killing her, Marquard took her money, her purse and wallet, and then took her car and other property. Competent substantial evidence supports the trial court's ruling on this motion. We find no error.
At the conclusion of the penalty phase, defense counsel attempted to argue to the jury how sentencing might work if Marquard were to receive a life sentence on the murder conviction:
MR. PEARL [defense counsel]: In this case, let me remind you, if you find and recommend that Marquard, John Marquard, should be given life instead of death, he will, in the first instance, be sentenced  and it is the only sentence he can receive in this case for first-degree murder  and will receive a sentence of life imprisonment in which he must serve a minimum mandatory 25 years in prison before he becomes eligible for release.
I want to remind you further that there is a second conviction which you have voted in a separate verdict, and that is for armed robbery, a very, very serious crime in this state for which the judge could 
The judge sustained the State's objection at this point, and Marquard now claims this was error. The court, however, cut off defense counsel's argument at the point where he *58 began discussing hypothetical sentencing on the armed robbery count. Sentencing on this charge was not before the jury  the sole issue before them was the proper sentence on the murder charge. Nixon v. State, 572 So.2d 1336, 1345 (Fla. 1990), cert. denied, ___ U.S. ___, 112 S.Ct. 164, 116 L.Ed.2d 128 (1991) ("As to offenses in which the jury plays no role in sentencing, the jury will not be advised of the possible penalties."). We find no error.
Marquard claims that there was insufficient evidence to support instructing on, and the finding of, the aggravating circumstance that the murder was committed while the perpetrator was under sentence of imprisonment. The State, however, introduced a certified copy of Marquard's North Carolina conviction for larceny, for which he was given a two-year sentence. His parole officer testified that he was on parole at the time of the murder. See Carter v. State, 576 So.2d 1291 (Fla. 1989), cert. denied, ___ U.S. ___, 112 S.Ct. 225, 116 L.Ed.2d 182 (1991) (parole constitutes sentence of imprisonment for purpose of this aggravating circumstance). We find no error.[4]
Based on the foregoing, we affirm Marquard's convictions and sentences.
It is so ordered.
GRIMES, C.J., OVERTON, KOGAN and HARDING, JJ., and McDONALD, Senior Justice, concur.
NOTES
[1] The judge found that the murder was committed while Marquard was under sentence of imprisonment; was committed during the course of a robbery; was especially heinous, atrocious, or cruel; and was cold, calculated, and premeditated.
[2] The judge made the following findings:

The Court finds the Defendant had an unstable family life as a child and lacked the emotional support and care he should have received.
... .
The Court finds that Defendant suffers from either a personality disorder not otherwise specified or an antisocial personality. There is not much difference between the two. The Court further finds Defendant did not have a stable home, but had divorced parents and an alcoholic mother with whom he lived. He had a difficult childhood. He may have been sexually abused on one occasion. Defendant used various drugs and alcohol, however, there is no evidence that use of those had anything whatsoever to do with the commission of the murder.
[3] Marquard claims the trial court erred in ruling on the following matters: 1) excusing for cause a death-qualified venireperson; 2) refusing to suppress knives and camouflage pants; 3) permitting the State to introduce evidence of Marquard's talk of how to kill people with knives and how to make a "silent kill;" 4) denying defense request for judgment of acquittal on the armed robbery count; 5) refusing to allow defense counsel to argue to the jury concerning the consequences of life imprisonment; 6) permitting cross-exam into Marquard's criminal history during the penalty phase; 7) in instructing on and finding the aggravating circumstance of commission while under sentence of imprisonment; 8) in instructing on and finding that the murder was especially heinous, atrocious, or cruel; 9) in finding that the murder was for pecuniary gain; 10) in finding that the murder was cold, calculated, and premeditated; 11) the cumulative effect of numerous minor errors; 12) the constitutionality of the death penalty scheme.
[4] We dispose of the remainder of Marquard's claims as follows: Issue 6 (no error); Issue 8 (no error); Issue 9 (no error); Issue 10 (no error); Issue 11 (not preserved as to the trial court's denial of motion for judgment of acquittal on murder charge; no error as to admission of shirt, boot, knife, and photo; not preserved as to prosecutor's comments; no error in allowing State mental health expert to sit in on trial; no error in admitting opinion testimony of Dr. Merwin); Issue 12 (no merit).