850 So.2d 417 (2002)
John C. MARQUARD, Appellant,
v.
STATE of Florida, Appellee.
John C. Marquard, Petitioner,
v.
Michael W. Moore, etc., et al., Respondents.
Nos. SC00-253, SC00-1540.
Supreme Court of Florida.
November 21, 2002.
Rehearing Denied May 1 and July 15, 2003.
*421 Bill Jennings, Capital Collateral Regional CounselMiddle Region, Peter J. Cannon, Assistant CCRC, Kevin T. Beck, Assistant CCRC, and Leslie Anne Scalley, Staff Attorney, Tampa, FL, for Appellant/Petitioner.
Richard E. Doran, Attorney General, and Kenneth S. Nunnelley, Assistant Attorney General, Daytona Beach, FL, for Appellee/Respondent.
PER CURIAM.
John Marquard, an inmate under sentence of death, appeals an order of the circuit court denying his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 and petitions this Court for a writ of habeas corpus. We have jurisdiction. See art. V, § 3(b)(1), (9), Fla. Const. For the reasons that follow, we affirm the denial of Marquard's postconviction motion and deny the petition for habeas corpus.

*422 I. FACTS
Marquard was found guilty of first-degree murder and sentenced to death based on the following facts:
John Marquard, Mike Abshire, and the victim, Stacey Willets, decided to move from North Carolina to Florida in June 1991 using Stacey's car and sharing expenses. Prior to leaving, Marquard and Abshire discussed killing Stacey for her car and money, and during a stop in South Carolina Marquard told Abshire that he was going to kill her because he was tired of arguing with her. In St. Augustine, Marquard and Abshire formulated a plot to kill Stacey that night after luring her into the woods.
Marquard and Abshire invited Stacey to attend a party, drove her to a deserted area, and walked her into the woods. Marquard grabbed her from behind, stabbed her, threw her to the ground, and sat on her back. She was still breathing, so Marquard held her head under the rainwater that had accumulated in a puddle until she stopped breathing. When her body convulsed, he held her head underwater again. Abshire then stabbed her and the two tried to decapitate her. Marquard was arrested and confessed, saying he remembered walking into the woods with Stacey and standing over her body with a knife in hand. Abshire testified at trial, giving a detailed account of the murder.
Marquard was convicted of first-degree murder and armed robbery. The State put on a single witness to establish aggravation during the penalty phasea parole officer who testified that Marquard was on parole in North Carolina at the time of the killing. Marquard called Dr. Harry Krop to establish mitigation, and Dr. Krop testified extensively concerning Marquard's deprived childhood and present psychological state. The State put on its own mental health expert, Dr. Merwin, in rebuttal. The jury recommended death by a twelve-to-zero vote, and the court imposed death, finding four aggravating circumstances and a number of nonstatutory mitigating factors. The court imposed a consecutive life term for the armed robbery conviction.
Marquard v. State, 641 So.2d 54, 55-56 (Fla.1994) (footnotes omitted). This Court affirmed his convictions and sentences. Id.
Codefendant Abshire was tried separately, was found guilty of first-degree murder, and was likewise sentenced to death. This Court subsequently reversed Abshire's conviction and vacated his death sentence based on the fact that during Abshire's trial, the assistant state attorney indicated that he sought to exclude women from the jury solely because of gender. Abshire v. State, 642 So.2d 542 (Fla.1994). Upon remand, Abshire received a life sentence.
Marquard filed a motion for postconviction relief pursuant to Florida Rule of Criminal Procedure 3.850, and on May 12, 1999, the trial court ordered a hearing. Defense counsel amended the motion, asserting that Marquard's death sentence should be vacated based on newly discovered evidence that Abshire's sentence was reduced to life and Abshire's admission to cutting the victim's neck while she was still alive. After holding an evidentiary hearing, the trial court denied relief but reserved jurisdiction on Marquard's proportionality claim. Marquard appealed the denial of relief, and this Court temporarily relinquished jurisdiction for the sole purpose of allowing the circuit court to enter an order on proportionality. After reviewing the record, the trial court found that Marquard's sentence of death was proportional. *423 This consolidated appeal and petition for writ of habeas corpus followed.

II. 3.850 APPEAL
Marquard's appeal raises ten claims.[1] We summarily dispose of four of his claims because they are procedurally barred[2] or without merit.[3]

Newly Discovered Evidence
Marquard asserts that his sentence of death should be vacated because newly discovered evidence establishes that: (1) his codefendant received a life sentence; and (2) his codefendant recently recanted his trial testimony and admitted to hacking the victim's neck while she was alive. We disagree. To set aside a sentence of death based on newly discovered evidence, Marquard must show "first, that the newly discovered evidence was unknown to the defendant or defendant's counsel at the time of trial and could not have been discovered through due diligence and, second, that the evidence is of such a character that it would probably produce an acquittal on retrial." Mills v. State, 786 So.2d 547, 549 (Fla.2001).
A codefendant's subsequent life sentence can constitute newly discovered evidence which is cognizable in a 3.850 proceeding.[4] However, "[w]here the circumstances indicate that the defendant is more culpable than a codefendant, disparate treatment is not impermissible despite the fact the codefendant received a lighter sentence for his participation in the same crime." Brown v. State, 721 So.2d 274, 282 (Fla.1998).[5]
*424 In this case, the postconviction court found that Marquard was not entitled to relief because he was more culpable:
The defendant, John C. Marquard, was, in fact, the dominant person in this entire course of events. It was John C. Marquard who made the decision that they should kill Stacey Willetts. John Marquard drove Willetts and Abshire to the wooded area, were [sic] they eventually took her life. Marquard took both individuals through the woods to the eventual location, were [sic] he caused the death of Stacey Willetts. The defendant, John Marquard, was the individual who had the knife, who cut Stacey Willetts' throat, and attempted to decapitate her, and who then handed the knife to his codefendant, Michael Abshire, and ordered him to stab the victim.... The Court further finds that based on the totality of the circumstances in this case, that the defendant's sentence of death was, in fact, proportional.
As this Court has recognized, "[a] trial court's determination concerning the relative culpability of the co-perpetrators in a first-degree murder case is a finding of fact and will be sustained on review if supported by competent substantial evidence." Puccio v. State, 701 So.2d 858, 860 (Fla.1997). After reviewing the record, we find that the trial court's decision meets this standard of review. Accordingly, as Marquard was the more culpable defendant, the fact that his codefendant's sentence was subsequently reduced to life imprisonment does not mandate a resentencing.
Secondly, Marquard asserts that he is entitled to a resentencing because codefendant Abshire recently recanted testimony that he gave at Marquard's initial trial. In Armstrong v. State, 642 So.2d 730, 735 (Fla.1994), this Court set forth the principles to be applied in granting a new trial based on recantation:
Recantation by a witness called on behalf of the prosecution does not necessarily entitle a defendant to a new trial. Brown v. State, 381 So.2d 690 (Fla.1980), cert. denied, 449 U.S. 1118, 101 S.Ct. 931, 66 L.Ed.2d 847 (1981); Bell v. State, 90 So.2d 704 (Fla.1956). In determining whether a new trial is warranted due to recantation of a witness's testimony, a trial judge is to examine all the circumstances of the case, including the testimony of the witnesses submitted on the motion for the new trial. Bell. "Moreover, recanting testimony is exceedingly unreliable, and it is the duty of the court to deny a new trial where it is not satisfied that such testimony is true. Especially is this true where the recantation involves a confession of perjury." Id. at 705 (quoting Henderson v. State, 135 Fla. 548, 561, 185 So. 625, 630 (1938) (Brown, J., concurring specially)). Only when it appears that, on a new trial, the witness's testimony will change to such an extent as to render probable a different verdict will a new trial be granted. Id.

Because this entails a determination as to the credibility of the witness, this Court "will not substitute its judgment for that of the trial court on issues of credibility" so long as the decision is supported by competent, substantial evidence. Johnson v. State, 769 So.2d 990, 1000 (Fla.2000). The trial court found that Abshire's most recent testimony could not constitute "newly discovered evidence," but was "simply the latest version of the events surrounding *425 the homicide which is in direct conflict with Abshire's prior testimony and other evidence presented at the Defendant's trial." We agree.
Moreover, the substance of Abshire's new testimony does not provide a sufficient basis for granting a resentencing because his testimony did not significantly vary from his trial testimony. Abshire's new testimony differs only in two key aspects: (1) he contends that he and Marquard had consumed a fair amount of alcohol on the night of the crime; and (2) he states that Stacey may have still been alive when he cut her neck. Even Abshire's most recent story reveals that despite Marquard's alleged intoxication, he was still able to safely drive the car through inclement weather conditions and was able to trek through the woods and attack Stacey. Moreover, Abshire's testimony does not change the fact that Marquard was clearly the more culpable defendant.

Denial of a Full and Fair Evidentiary Hearing
Marquard next asserts that he was denied a full and fair postconviction evidentiary hearing. He argues that the trial court erred in refusing to permit hearsay testimony from several witnesses. He is correct in his assertion that Florida law provides that the usual rules of evidence are relaxed during the penalty phase and that hearsay evidence is permitted so long as a fair opportunity of rebuttal is permitted. § 921.141(1), Fla. Stat. (1999). We find, however, that the instances where hearsay objections were sustained were minimal and the testimony at issue would not have presented the type of mitigation which would have shown that the penalty imposed was disproportional. We conclude that any error in not allowing this hearsay testimony was harmless in this instance.
Second, Marquard contends that he was denied a full evidentiary hearing when the trial judge failed to take judicial notice of witness Harrison's prior testimony from the codefendant's original trial proceeding. Marquard posits that this would be permissible under sections 90.803(22) and 90.804(2)(a) of Florida Statutes (1999). We disagree.
Section 90.803(22) provides:
[T]he following are not inadmissible as evidence, even though the declarant is available as a witness:
....
(22) FORMER TESTIMONY.Former testimony given by the declarant which testimony was given as a witness at another hearing of the same or a different proceeding ... if the party against whom the testimony is now offered... had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination; provided, however, the court finds that the testimony is not inadmissible pursuant to s. 90.402 or s. 90.403.
§ 90.803(22), Fla. Stat. (1999) (emphasis added). This provision does not require the court to take judicial notice of Harrison's former testimony in the prosecution of Abshirethe State did not have the same motive to inquire as to Marquard's participation that it would have in Marquard's postconviction evidentiary hearing.
Section 90.804(2)(a) is likewise inapplicable as it requires the State to have a similar motive to develop the testimony at issue. This section provides in relevant part:
(2) HEARSAY EXCEPTIONS.The following are not excluded under s. 90.802, provided that the declarant is unavailable as a witness:
(a) Former testimony.Testimony given as a witness at another hearing of *426 the same or a different proceeding ... if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination.
§ 90.804(2)(a), Fla. Stat. (1999) (emphasis added). As neither of these provisions applies to the case at hand, we deny the claim.

Ineffective Assistance of Counsel During the Guilt Phase
Marquard alleges that he received ineffective assistance of counsel during the guilt phase when counsel failed to: (1) question the jury panel regarding its feelings relative to gruesome evidence; (2) properly litigate the exclusion of juror Robinson; (3) impeach witnesses with prior sworn statements and call other witnesses who could testify to facts inconsistent with the State's theory of the crime; (4) object to the introduction of the victim's bones and other gruesome evidence; and (5) effectively cross-examine one of the State's expert witnesses. Pursuant to Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), in order to establish a claim of ineffective assistance of counsel during the guilt phase, a defendant must prove two elements:
First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction... resulted from a breakdown in the adversary process that renders the result unreliable.
Valle v. State, 778 So.2d 960, 965 (Fla. 2001) (quoting Strickland, 466 U.S. at 687, 104 S.Ct. 2052). A claimant is not entitled to relief if the claim merely expresses disagreement with trial counsel's strategy.[6]
Marquard first asserts that his defense counsel, Mr. Woods, was ineffective because Woods testified at the postconviction evidentiary hearing that he purposely chose not to present the graphic details of the murder during voir dire since he felt to do so could prejudice the entire panel. The trial court accepted this explanation, finding: "Trial counsel testified at the evidentiary hearing that he made a strategic decision not to emphasize these matters and the Court finds that counsel's decision was reasonable." We agree. It is well-established that "[s]trategic decisions do not constitute ineffective assistance if alternative courses of action have been considered and rejected." State v. Bolender, 503 So.2d 1247, 1250 (Fla.1987). In this case, counsel's strategic decision was not so unreasonable as to constitute ineffectiveness.
In his next claim, Marquard contends that trial counsel failed to properly litigate the exclusion of juror Robinson when he neglected to ask Robinson if he could temporarily set aside his beliefs against the death penalty and follow the law. Marquard did not raise this challenge *427 with the postconviction court but instead raised only the issue of whether the State improperly challenged this juror because of his race. As this specific contention was not addressed to the trial court, it will not be considered on appeal. See Knight v. State, 746 So.2d 423, 433 (Fla.1998).
In his third claim of ineffective guilt phase assistance, Marquard contends that defense counsel failed to effectively impeach Abshire with his deposition statement that "nobody could get between him and John," thus giving Abshire a motive to kill the victim. Even taking Marquard's allegations as true, he cannot show prejudice.[7] Before he killed the victim, Marquard informed a landlady that he was looking for a place for just two, and soon after discussed killing Stacey. Although the circumstances also implicated Abshire, they clearly established Marquard was the principal actor; therefore, the testimony at issue would not have provided "a reasonable probability, sufficient to undermine confidence in the outcome, that the outcome of the proceeding would have been different." Gudinas v. State, 816 So.2d 1095, 1106 (Fla.2002).
Marquard also argues that counsel failed to call certain witnesses who could have asserted that Abshire inflicted the fatal wound. Counsel testified that he chose not to call the witnesses in question because they did not exonerate the defendant, but in fact, confirmed that Marquard was a participant in the crime. This strategic decision does not establish ineffectiveness and hence, this claim is denied.
Fourth, Marquard contends that his counsel was ineffective in failing to object to the introduction of the victim's bones and failing to object to a video of the crime scene which depicted the victim's bones and personal possessions that were scattered throughout the woods. Defense counsel asserted that he did not object to the admission of this evidence because it would not have been well founded, especially in light of the fact that the evidence was relevant to many of the disputed facts. As this Court has previously stated, "We have consistently upheld the admission of allegedly gruesome photographs where they were independently relevant or corroborative of other evidence." Czubak v. State, 570 So.2d 925, 928 (Fla.1990). In this case, the victim's shirt and bones revealed knife marks which were caused close to the time of deathevidence which was relevant to the manner in which the victim was murdered. Further because the remains were skeletal, they were not nearly as prejudicial and shocking as other photographs that we have found admissible. See, e.g., Straight v. State, 397 So.2d 903, 907 (Fla.1981) (holding that a photograph of the victim's decomposed body was admissible where relevant to corroborate testimony as to how death was inflicted). Accordingly, we deny this claim.
In his final guilt phase claim, Marquard contends that counsel was ineffective in failing to cross-examine Dr. Maples as to whether the damage to the bones could have occurred postmortem. During Dr. Maples' direct examination, he testified as to the difficulty in distinguishing different injuries to the bone and noted that he could tell if an injury occurred during a person's lifetime because there would be some evidence of "remodeling" around the wound. He then testified that *428 three of Stacey's bones had evidence of inflicted damage which occurred "around the time of death." We find that the failure to cross-examine Dr. Maples on this issue does not constitute ineffective assistance of counsel and hence deny relief on this claim.

Ineffective Assistance of Counsel During the Penalty Phase
Marquard alleges that he received ineffective assistance of counsel during the penalty phase when counsel failed to: (1) call two potential witnesses; (2) present family members to better present Marquard's childhood abuse and his history of substance abuse; (3) to ensure that Marquard received an adequate mental health examination; and (4) to prevent the jury from seeing Marquard in handcuffs. In order to prevail on this portion of his claim, Marquard must prove deficient performance and prejudice. To establish prejudice in the penalty phase of the trial, "the defendant must demonstrate that there is a reasonable probability that, absent trial counsel's error, the sentencer... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Cherry v. State, 781 So.2d 1040, 1048 (Fla.2000) (quotation marks omitted.)
Marquard first asserts that his counsel was ineffective in failing to call Hobart Harrison and David Blanks as a witnesses in the case since these witnesses could have established that Abshire was the one to inflict the fatal blow. He further posits that counsel was ineffective because they had a conflict of interest as to Harrison and did not act on this conflict.[8]
At the rule 3.850 evidentiary hearing, defense counsel testified that the defense did not present these witnesses because they implicated the defendant in the crime. Moreover, Woods and his co-counsel specifically chose not to call Harrison because they knew him, could not rely on his testimony, and felt that Harrison would say whatever was requested of him so long as there was a benefit to him. Although Woods recognized that both he and his co-counsel had represented Harrison at some point in the past, he denied there was a conflict of interest in representing Marquard. Harrison did not become a potential witness until late in the case, and defense counsel had no intention of calling Harrison based on the unfavorable nature of his testimony, as well as his credibility problems.
The trial court denied this subissue, finding in relevant part:
Hobart Harrison has a long criminal record and his testimony was not worthy of belief. Trial counsel testified at the evidentiary hearing, that he made a tactical decision not to call Hobart Harrison, because he was not willing to vouch for his credibility and Hobart Harrison's testimony would have implicated the Defendant.... The Court finds that the trial counsel was not ineffective for failing to call Hobart Harrison.
We agree. Moreover, even had Harrison and Blanks testified during the trial, their testimony would have substantiated the other evidence indicating that Marquard was the defendant who initiated the murder; hence, he cannot show prejudice. Harrison was never called as a witness, and it is clear that defense counsel's failure to call Harrison was not based on any potential conflict but was based on the fact *429 that Harrison was an uncontrollable witness and that his testimony implicated the defendant.
Marquard's second claim asserts that his counsel should have presented certain witnesses who could have testified relative to the childhood abuse suffered by Marquard and his significant history of substance abuse. At Marquard's initial trial, his counsel chose to provide all relevant records and depositions to the mental health expert, Dr. Krop, and rely solely on Dr. Krop's testimony so that he could inform the jury as to Marquard's problems from a mental health perspective. Marquard contends that the strategy of relying solely on Dr. Krop was questionable and that counsel also should have presented the testimony of family members and friends which would have personalized Dr. Krop's testimony. He also contends that his counsel was ineffective in not calling witnesses who could have testified in detail as to Marquard's childhood.
The trial court denied this claim, finding:
Contrary to the allegations in the Motion, Roger Marquard, the Defendant's father, testified that the Defendant's mother was not an alcoholic when the defendant was born and that family life was relatively normal until the Defendant was approximately five years of age. At that time the Defendant's mother became an alcoholic and the parties divorced. The Defendant's sister testified that the mother was abusive to her, but never to the Defendant. The Defendant's second sister, Amy, is deceased at this time and trial counsel cannot be faulted for failing to call her during the sentencing phase. The evidence is clear that if Amy had been called as a witness, she would have had to testify concerning the Defendant's conviction for molesting her child. No evidence was presented of any information which would have presented mitigating circumstances in the penalty phase.
Contrary to the allegations in the Motion for Post Conviction Relief, no evidence was presented to show that John Marquard was ever sexually molested as a child either at home or by neighbors. There was no evidence presented at the evidentiary hearing that the Defendant's mother ever abused him, either physically or mentally. The Defendant never provided trial counsel with the names of any witnesses in mitigation. Trial counsel cannot be faulted for failing to call witnesses whose names are not disclosed by the Defendant.
Marquard challenges the trial court's findings and conclusions. We disagree and find that the trial court's findings and conclusions are supported by competent, substantial evidence, and accordingly we "will not substitute [our] judgment for that of the trial court on questions of fact and, likewise, on the credibility of the witnesses and the weight to be given to the evidence by the trial court." Porter v. State, 788 So.2d 917, 923 (Fla.2001).
Dr. Krop testified relative to Marquard's history of drug use and childhood abuse and informed the jury as to the effects of this history on Marquard's present state of mind.[9] The jury thus knew of Marquard's drug addiction, that it began at an early age, and that he had a deprived childhood. Although other witnesses could have provided more details relative to Marquard's early life, counsel is not required to present *430 cumulative evidence.[10] Accordingly, we do not find that Marquard's counsel was ineffective in his representation.[11]
In the third subissue, Marquard contends that his counsel failed to ensure that he received an adequate mental health examination. In support of this claim, Marquard presented the testimony of three expert witnesses during the evidentiary hearing. Dr. Amiel testified that his opinion differed slightly from Dr. Krop's opinion. Specifically, Dr. Amiel believed Marquard's lack of memory could be consistent with some kind of "psychogenic amnestic period" and that his impulse control may have been "mildly impaired" at the time of the crime. Dr. Amiel said that his evaluation would have delved more into why Marquard abused drugs and that his substance abuse may have been a method of self-medication for his chronic depressive disorder. However, when expressly asked if Dr. Krop failed to give any specific tests, interviews, or other procedures, Dr. Amiel replied that there was none he could think of. He also admitted that his opinion relative to a psychogenic amnestic period and a reduction of impulse control was merely a possibility and was not a conclusive diagnosis.
Dr. Crown, the second expert presented, testified that although Marquard had a "vocabulary age" of over nineteen years, his problem-solving skills were not as well developed and were more of the equivalent of someone in mid-adolescence. According to his diagnosis, Marquard was also deficient in his ability to process spoken words. He also gave Marquard a personality test which indicated that Marquard suffered from long-standing problems, including an indication of schizophrenia in a subacute stage that made it more difficult for Marquard to discern reality. Dr. Crown categorized this as a behavioral diagnosis rather than a psychological diagnosis. He did not contend that Dr. Krop failed to perform a standard test which was required in the field.
Finally, Marquard presented the testimony of a social worker, Cheryl Furtick, who provided a psychosocial assessment (i.e., looking at psychological factors that impact individuals including social, economic, and biological factors). She interviewed family members, reviewed Marquard's records, and reviewed Dr. Krop's testimony. She asserted that "Dr. Krop did ... a very excellent outline in his testimony of the deficits that John experienced throughout his life cycle," but he neglected to state the details as to Marquard's background. She also asserted that important information was missing from Marquard's background records and that Dr. Krop should have detailed the information which was not included in the records.
The trial court denied this claim, finding:
The testimony of the expert witnesses at the evidentiary hearing shows that neither had any substantial criticisms of Dr. Krop's work, and, in fact, when asked directly, neither could point to any specific failure which would have been material to this case. At the evidentiary hearing, appellate counsel introduced the testimony of a social worker in an attempt to show that trial *431 counsel was ineffective for failing to call such a witness during the penalty phase. The testimony of the social worker was totally based on hearsay and would have been inadmissible. Trial counsel cannot be faulted for failing to hire and call a witness whose testimony would not be relevant or admissible.... The Court finds that all relevant matters in mitigation were in fact presented at the penalty phase.
There is competent, substantial evidence to support these findings. Accordingly, we deny this claim.
In his final claim, Marquard asserts that counsel was deficient because Marquard was shackled during some portion of the penalty phase and defense counsel failed to object. Because this occurred only during the penalty phase, and not the guilt phase, in order to show prejudice, Marquard must show that "there is a reasonable probability that, absent trial counsel's error, the sentencer ... would have concluded that the balance of aggravating and mitigating circumstances did not warrant death." Cherry, 781 So.2d at 1048. We find that this standard has not been met because there is no reasonable probability that but for the shackling of the defendant, the sentencer would have concluded that the defendant did not deserve a death sentence. Marquard coldly and carefully planned to murder his girlfriend because he was tired of her bickering and wanted her car and money. He made up a story to entice her into the woods, stabbed her, drowned her, directed his friend to stab her, and then tried to decapitate her. After she was dead, he searched her pockets for money and car keys and divided her possessions with his codefendant. The jury unanimously recommended a sentence of death and the trial court imposed this sentence after finding four aggravating circumstances, no statutory mitigating circumstances, and minimal nonstatutory mitigating circumstances. Hence we deny this claim.

III. HABEAS CORPUS PETITION
Marquard raises five additional claims in his habeas corpus petition: (1) whether newly discovered evidence demonstrates that Marquard's death sentence is disproportional and disparate; (2) whether the prosecutor improperly introduced nonstatutory aggravators during the penalty phase; (3) whether Marquard is entitled to resentencing based on improper jury instructions; (4) whether the jury instructions shifted the burden of proof to Marquard; and (5) whether his execution is unconstitutional because Marquard may be incompetent at that time.[12] We summarily deny two of these claims.[13]
In the first claim we address, Marquard alleges that his appellate counsel was ineffective in failing to raise the *432 issue of whether nonstatutory aggravating circumstances were considered. He posits that appellate counsel should have asserted that the trial judge took nonstatutory aggravating circumstances into consideration when he noted that the murder was senseless and that the victim trusted Marquard.
This claim is meritless. Trial counsel did not object at trial, and hence appellate counsel would be ineffective only if the unobjected-to conduct amounted to fundamental error which appellate counsel failed to raise. Although the trial court noted that the attack was unprovoked and was a brutal and senseless killing, it is clear from the trial court's order that it confined itself to the four aggravating circumstances which were proven. Although the trial court's order contained facts which were supported by the evidence, there is no showing that the court improperly considered nonstatutory aggravators. We deny this claim because Marquard cannot show that the failure of appellate counsel to raise this ground on direct appeal amounted to reversible error.
Marquard next asserts that appellate counsel should have raised the unpreserved claim that the cold, calculated, and premeditated jury instruction was unconstitutionally vague. This claim was not properly objected to at trial; therefore, appellate counsel was not ineffective in not raising it on appeal.[14]
Marquard argues that his appellate counsel was ineffective when he failed to challenge the jury instructions because they impermissibly informed the jury as to both the "pecuniary gain" aggravator and the "during the commission of a felony" aggravator without instructing the jury that it could not double this aggravating circumstance. During the charge conference, the trial judge stated that he would not instruct the jury on the aggravating circumstance that the crime was committed for financial gain but would give the instruction relating to whether the crime occurred during the course of a robbery. The court specifically noted that to charge the jury on both aggravators would double this one circumstance. The judge rejected the State's request to instruct the jury on both aggravators and then give a limiting instruction, fearing that the jury might miss such instruction. Defense counsel agreed and asserted that he would object if the trial court instructed the jury on the financial gain aggravator. Notwithstanding this discussion, the trial court instructed the jury as follows:
The aggravating circumstances that you may consider are limited to any of the following that are established by the evidence: number one, the capital felony was committed by a person under a sentence of imprisonment or placed on Community Control ...; number two, the crime for which the defendant is to be sentenced was committed while he was engaged in the commission of a robbery or was committed for financial gain; number three, the crime for which the defendant is to be sentenced was especially heinous, atrocious or cruel...; number four, the crime for which the defendant is to be sentenced was committed in a cold, calculated and premeditated manner without any pretense of moral or legal justification.
At the end of the jury charges, defense counsel did not make any specific objections *433 but stated merely that he renewed "every objection heretofore made during this phase of the trial." We find that this generic objection did not properly preserve the issue. Generally, where a defendant has objected to a jury instruction and it is clear that the court understood the objection and denied it, we do not require counsel to specifically raise the objection again after the instructions because such a requirement would be fruitless.[15] In this case, however, the trial court sustained the objection and clearly informed all parties that he would not advise the jury as to both aggravators to ensure that there would be no chance of doubling them. Defense counsel never objected when the instruction was given, never mentioned that the instruction was in violation of the charge conference agreement, and never made a specific objection to the particular instruction as given. Had counsel properly advised the court, the trial judge could have recalled the jurors and rectified the problem before the jury deliberated in the case.[16] This issue was not properly preserved; therefore, appellate counsel was not ineffective in failing to raise it on appeal.
Marquard also posits that appellate counsel failed to raise the issue that the "in the course of a felony" instruction unconstitutionally amounts to an automatic aggravator. This claim is likewise without merit. See Hudson v. State, 708 So.2d 256, 262 (Fla.1998) (rejecting the argument that the "murder in the course of a felony" aggravator is an invalid automatic aggravator).
In his penultimate claim, Marquard challenges the applicability of the "under sentence of imprisonment" aggravator. This claim is procedurally barred since Marquard challenged this aggravator on direct appeal and we rejected his argument.[17] Marquard attempts to surmount this bar by asserting that in 1996, the Legislature limited this aggravator to only those placed on "felony probation;" he contends that because he committed a misdemeanor, this aggravator should no longer apply. The subsequent legislative amendments, however, do not apply to his case, and accordingly, we deny this claim.
Finally, Marquard asserts that the jury instructions during the penalty phase impermissibly shifted the burden of proof. As Marquard was given the standard jury instructions, this claim is meritless.[18]

IV. CONCLUSION
Accordingly, we affirm the lower court's denial of Marquard's 3.850 motion for postconviction *434 relief and deny the petition for habeas corpus.
It is so ordered.
SHAW, WELLS, LEWIS, and QUINCE, JJ., and HARDING, Senior Justice, concur.
ANSTEAD, C.J., concurs specially with an opinion, in which PARIENTE, J., concurs.
ANSTEAD, C.J., specially concurring.
Although I agree with the majority opinion in result, I write to express concern about the opinion's failure to discuss the trial court's summary denial of Marquard's 3.850 claim that counsel was ineffective for failing to object to the trial court's jury instruction on the aggravator of "committed while he was engaged in the commission of a felony," which instruction made mention of "financial gain" a separate aggravator that was not being sought in this case.
As the majority opinion states, during the penalty phase charge conference, the trial court ruled that it would not give the "financial gain" statutory aggravator instruction to the jury, but that it would give the "committed while he was engaged in the commission of a felony" aggravator. The trial court proceeded to instruct the jury, stating: "Number two, the crime for which the defendant is to be sentenced was committed while he was engaged in the commission of a robbery or was committed for financial gain ...."[19] At trial, defense counsel did not specifically object to the wording of the jury instructions on the aggravating circumstances. The jury returned with a unanimous recommendation that Marquard be sentenced to death. Marquard v. State, 641 So.2d 54, 56 (Fla. 1994). Thereafter, the trial court imposed death, finding that four statutory aggravators applied in this case: (1) the murder was committed while the defendant was under a sentence of imprisonment; (2) the murder was committed during the course of a felony (robbery); (3) the murder was especially heinous, atrocious, or cruel; and (4) the murder was cold, calculated, and premeditated. Id. at 56 n. 1. The trial court did not find the "financial gain" aggravator.
As part of the 3.850 claim that the penalty phase jury instructions were inaccurate, vague, overbroad, and failed to give the jury proper guidance, Marquard made an ineffective assistance of counsel (IAC) claim that trial counsel was ineffective for inadequately raising and preserving the issues related to the instructions on the "financial gain" aggravator and the "committed while he was engaged in the commission of a felony" aggravator.[20] In his petition for writ of habeas corpus, Marquard made a similar claim that appellate counsel was ineffective for failing to challenge the penalty phase jury instructions, wherein the trial court instructed the jury about "financial gain." The majority opinion disposes of the habeas claim, stating: "Defense counsel never objected when the instruction was given.... This issue was not properly preserved; therefore, appellate *435 counsel was not ineffective in failing to raise it on appeal." On the other hand, the majority opinion addresses the "vague and overbroad jury instructions" 3.850 claim in footnote 2, stating that it is procedurally barred as an issue that should have properly been raised on direct appeal, just as the trial court previously ruled.
I agree with the portion of the majority opinion stating that appellate counsel could not have been ineffective for failing to raise the claim on appeal, because appellate counsel cannot be ineffective for failing to raise an issue not properly preserved for appeal. See Johnson v. Singletary, 695 So.2d 263, 266-67 (Fla.1997). However, I disagree with the majority opinion's failure to address the trial court's summary denial of Marquard's related 3.850 IAC claim. The majority opinion finds that the "vague and overbroad jury instructions" claim, apparently including trial counsel's alleged ineffectiveness, is procedurally barred and should have been raised on direct appeal. However, I feel that such a result is internally inconsistent.
By stating that appellate counsel is insulated from a finding of ineffectiveness due to trial counsel's failure to preserve an issue but then finding that trial counsel's failure to preserve the objection was a subject for direct appeal, it appears that Marquard would have no avenue in which to collaterally challenge his trial counsel's failure to object to the penalty phase jury instruction at issue. I believe that the trial court's summary denial of Marquard's 3.850 IAC claim for trial counsel's failure to preserve an objection to the trial court's giving of the hybrid "committed while he was engaged in the commission of a felony" and "financial gain" aggravator deserves discussion and analysis under Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Nevertheless, I agree with the result, because I do not think that Marquard can satisfy the Strickland prejudice prong on this issue.
PARIENTE, J., concurs.
NOTES
[1] Specifically, Marquard alleges: (1) newly discovered evidence as to Abshire's life sentence establishes that Marquard's death sentence is disproportional; (2) newly discovered evidence relative to Abshire's recent testimony requires that Marquard's sentence be reduced; (3) Marquard had ineffective assistance of counsel at the penalty phase; (4) he was denied a full and fair postconviction evidentiary hearing; (5) Marquard had ineffective assistance of counsel at the guilt phase; (6) defense counsel failed to object to comments by the prosecutor and trial judge which diminished the jury's role in sentencing; (7) Marquard was unconstitutionally shackled during the trial; (8) the rule prohibiting counsel from interviewing the jurors is unconstitutional; (9) the jury instructions during the penalty phase were vague or overbroad; and (10) cumulative errors justify relief.
[2] We deny claims (6), (8), and (9) as procedurally barred as these issues should have been raised during the direct appeal. See Hoffman v. State, 800 So.2d 174, 178 n. 3 (Fla.2001) (holding that the claim as to whether the jury was misled by statements that diluted their responsibility for sentencing should have been raised on direct appeal and hence was procedurally barred) (claim 6); Rose v. State, 774 So.2d 629, 637 n. 12 (Fla. 2000) (holding that the claim "attacking the constitutionality of the Florida Bar Rule of Professional Conduct governing interviews of jurors is procedurally barred because Rose could have raised this issue on direct appeal") (claim 8); Bruno v. State, 807 So.2d 55, 70 (Fla.2001) (holding that the claim of the vague and confusing penalty-phase instructions was procedurally barred and should have been raised on direct appeal) (claim 9).
[3] Because we determine that no errors occurred for the reasons expressed in this opinion, we likewise conclude that his cumulative error claim is also without merit.
[4] See Scott v. Dugger, 604 So.2d 465, 469 (Fla.1992) ("[I]n a death case involving equally culpable codefendants the death sentence of one codefendant is subject to collateral review under rule 3.850 when another codefendant subsequently receives a life sentence.").
[5] See also Howell v. State, 707 So.2d 674, 683 (Fla.1998) (affirming the defendant's sentence of death, even though his two codefendants were sentenced to life, because the evidence was clear that the defendant was the most culpable); Cardona v. State, 641 So.2d 361, 365 (Fla.1994) (holding that sentence of death was not disproportional even though a codefendant was not sentenced to death because there was competent, substantial evidence to show that the defendant was more culpable in the murder); Downs v. State, 572 So.2d 895, 901 (Fla.1990) (same).
[6] See Occhicone v. State, 768 So.2d 1037, 1048 (Fla.2000) ("Moreover, strategic decisions do not constitute ineffective assistance of counsel if alternative courses have been considered and rejected and counsel's decision was reasonable under the norms of professional conduct.").
[7] See, e.g., Rutherford v. State, 727 So.2d 216, 221 (Fla.1998) ("If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (quoting Strickland, 466 U.S. at 697, 104 S.Ct. 2052).
[8] Although the State listed Harrison as a potential witness in Marquard's trial, he was not called to testify by either party.
[9] In fact, as this Court recognized during the direct appeal, "Dr. Krop testified extensively concerning Marquard's deprived childhood and present psychological state." Marquard v. State, 641 So.2d 54, 56 (Fla.1994).
[10] Maharaj v. State, 778 So.2d 944, 957 (Fla. 2000) ("Failure to present cumulative evidence is not ineffective assistance of counsel.").
[11] See, e.g., Cherry, 781 So.2d at 1051 (holding that even if trial counsel should have presented witnesses to testify about Cherry's abusive background, he was not entitled to relief because "most of the testimony now offered by Cherry is cumulative to that stated in Dr. Barnard's report").
[12] In a notice of supplemental authority, Marquard asserts that he is entitled to relief under the recent opinion of Ring v. Arizona, 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002). This Court addressed a similar contention in Bottoson v. Moore, 833 So.2d 693 (Fla.), cert. denied, 537 U.S. 1070, 123 S.Ct. 662, 154 L.Ed.2d 564 (2002), and King v. Moore, 831 So.2d 143 (Fla.), cert. denied, 537 U.S. 1067, 123 S.Ct. 657, 154 L.Ed.2d 556 (2002), and denied relief. We find that Marquard is likewise not entitled to relief on this claim.
[13] In his first claim, Marquard raises the same newly discovered evidence claim that was raised in the motion for postconviction relief. This is a claim that must be, and was, addressed to the Court through his 3.850 motion. See Scott v. Dugger, 604 So.2d 465, 468 (Fla.1992) (recognizing that "newly discovered evidence claims are now brought under rule 3.850"). We deny claim (5) as moot because Marquard has prematurely raised the issue of whether he is insane for the purpose of execution. See Fla. R.Crim. P. 3.811(c).
[14] See, e.g., Waterhouse v. State, 792 So.2d 1176, 1196 (Fla.2001) (holding that even though the CCP instruction given at the penalty phase was the same instruction which was invalidated in Jackson v. State, 648 So.2d 85 (Fla.1994), the claim that the CCP aggravator was vague or overbroad must be denied because it was not properly preserved).
[15] See, e.g., State v. Heathcoat, 442 So.2d 955, 955-56 (Fla.1983) (finding that defense counsel sufficiently preserved his jury instruction issue for review despite the fact that he did not object after instructions because the record clearly showed that defense counsel requested a specific instruction and the trial court "clearly understood the request and just as clearly denied the request").
[16] See, e.g., Franqui v. State, 804 So.2d 1185, 1192 (Fla.2001) (finding that the purpose of preservation is "to place the trial judge on notice that an error may have occurred and provide him or her with the opportunity to correct the error at an early stage of the proceedings").
[17] Johnson v. State, 522 So.2d 356, 357 (Fla. 1988) ("Therefore we reject Johnson's second claim because it was raised and rejected by this Court on direct appeal, and is thus procedurally barred.").
[18] Rutherford v. Moore, 774 So.2d 637, 644 (Fla.2000) ("This Court has previously rejected similar claims that the standard jury instructions improperly shift the burden to the defendant to prove that death is inappropriate....").
[19] The trial court's wording of aggravator "number two" indicates that it apparently combined the standard jury instructions for the "committed while he was engaged in the commission of a felony" and the "financial gain" aggravator.
[20] The record reflects that Marquard first raised this IAC claim in claim V, sections D and E, of his Amended Motion to Vacate Judgment of Convictions and Sentence with Special Request for Leave to Amend. The trial court summarily denied the claim as being procedurally barred because it "alleges matters which were or should have been raised on direct appeal."