968 So.2d 706 (2007)
Jean Claude MEUS, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-4278.
District Court of Appeal of Florida, Second District.
November 28, 2007.
*708 John H. Trevena, Largo, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and Richard M. Fishkin, Assistant Attorney General, Tampa, for Appellee.
Dana Christenson, pro se, Tampa, Amicus Curiae.
WALLACE, Judge.
Jean Claude Meus appeals the postconviction court's summary denial of his motion for postconviction relief filed under Florida Rule of Criminal Procedure 3.850. For the reasons that we explain below, we affirm in part, reverse in part, and remand for an evidentiary hearing.

The Factual Background
Late in the afternoon of May 11, 2001, Mr. Meus left Immokalee driving north in a semi-tractor trailer rig that was loaded with tomatoes. Later that evening, Mr. Meus was traveling east on State Road 64 in Hardee County. Nona Moore, a Hardee County resident, was also on the road that evening. Ms. Moore was driving a minivan, and she was accompanied by her three young daughters. At approximately 9:30 p.m., both Mr. Meus and Ms. Moore arrived at an intersection near Wauchula known as "Seven Mile Point." Because of its unusual configuration, this intersection  where Wauchula's East Main Street meets State Road 64  could be considered hazardous.
At that point, Mr. Meus' rig veered off State Road 64, reentered the roadway, and overturned onto Ms. Moore's minivan. Ms. Moore and one of her daughters were crushed to death, and the two surviving daughters were trapped in the van. Because of the weight of the trailer and its load, it took a long time for rescue personnel to extricate the two surviving children from the wreckage. In the aftermath of this horrible crash, numerous law enforcement officers, firefighters, and emergency medical personnel arrived at the scene to assist with the rescue operations.
More than one year after the event, the State charged Mr. Meus with two counts of vehicular homicide for the deaths of Ms. Moore and her daughter. Mr. Meus was tried in 2003, and a jury convicted him on both counts. The trial court sentenced Mr. Meus to concurrent fifteen-year prison terms on each count. Mr. Meus took a direct appeal, and this court affirmed his judgments and sentences. Meus v. State, 892 So.2d 1030 (Fla. 2d DCA 2004) (table decision). Next, Mr. Meus filed a petition alleging ineffective assistance of appellate counsel. After that petition was denied, Mr. Meus filed his postconviction motion. The postconviction court denied the motion without granting Mr. Meus an evidentiary hearing, and Mr. Meus filed this appeal.[1]

The Evidence at Trial
At trial, the State did not present any evidence that Mr. Meus' ability to operate his rig safely was impaired by the use of alcohol or drugs. Instead, the State's theory of the case was that Mr. Meus fell asleep at the wheel because he was sleep-deprived. *709 In support of this theory, the State presented evidence demonstrating that Mr. Meus had been driving for almost ten hours in a twenty-four-hour period. However, the State's case was entirely circumstantial. Mr. Meus denied that he had fallen asleep before the crash, and the State had no direct evidence that he did.
The trial developed into a battle of experts. Sergeant Owen T. Keen, a traffic homicide investigator employed by the Florida Highway Patrol, testified for the State. Sergeant Keen was called to the scene to investigate immediately after the crash. He took photographs, made various measurements, and prepared diagrams reconstructing the event. Sergeant Keen suggested that Mr. Meus fell asleep as he approached the intersection and drove off the roadway. According to the sergeant, Mr. Meus was awakened abruptly after he went off the side of the road. At that point, Mr. Meus overcorrected when he pulled the rig back onto the highway. Thus, when Mr. Meus reentered State Road 64, he was still heading east, but he was traveling in the westbound lane. Mr. Meus then saw a vehicle that he thought was in his lane, and he swerved to the right to avoid the oncoming vehicle. Sergeant Keen opined that these maneuvers caused the rig to overturn and crush Ms. Moore's minivan.
However, Mr. Meus did not admit that he had fallen asleep while driving. At the scene, he gave a statement to Sergeant Keen. The sergeant recounted Mr. Meus' statement during his trial testimony as follows:
[Mr. Meus was] travelling [sic] eastbound on State Road 64 and as he was approaching the intersection where the stop sign is located at 636 [East Main Street] that there was a vehicle that was making a turn onto 64 that had been travelling [sic] eastbound, and turning back westbound to go the direction he just came from. He described this vehicle as a truck, probably [an] extended cab truck or a white vehicle or possibly a van. And as he, as this vehicle made the turn onto 64 heading back towards Zolfo Springs, the lights were on bright and they blinded him, which caused him to swerve to the right quickly to avoid hitting him because it was in his lane travelling [sic] back towards Zolfo. And as he swerved to the right, this is when he lost control of the vehicle and overturned until he came to the final rest.
Thus Mr. Meus said that the cause of the accident was the sudden appearance of an oncoming vehicle in his lane of travel, not falling asleep at the wheel. The alleged oncoming vehicle described by Mr. Meus did not stop at the scene of the crash, and it was apparently never found or identified.
Mr. Meus did not testify at trial. The theory of the defense was based on Mr. Meus' postcrash statement to Sergeant Keen. Mr. Meus presented the testimony of Victor Fisher, an accident reconstruction expert and a former traffic homicide investigator for the Florida Highway Patrol. Mr. Fisher's testimony supported the defense theory concerning how the crash occurred. Mr. Fisher also disputed many of Sergeant Keen's findings and conclusions.

The Postconviction Motion
Mr. Meus filed his postconviction motion in December 2005. He subsequently amended the motion and filed two supplements to it. As a result of this process of amendment and supplementation, the motion ultimately raised multiple claims. After a thorough review of the postconviction court's order and the two-volume record, we conclude that the postconviction court erred in failing to grant Mr. Meus an evidentiary hearing on his claim that his *710 trial counsel was ineffective for omitting to interview and call as a witness Juan Otero of the Zolfo Springs Fire Department. Mr. Otero was one of the first emergency personnel to arrive at the scene of the crash. The remaining claims were either facially insufficient or were adequately refuted by the portions of the record that the postconviction court attached to its order.
We have not overlooked Mr. Meus' claim  raised for the first time in his initial brief filed in this court  that the judge who denied the postconviction motion should have recused himself after receiving and reviewing ex parte communications that the judge deemed inappropriate. Although it appears to us that the postconviction court handled this matter properly, Mr. Meus waived the issue by failing to raise it in the postconviction court before seeking relief here.

The Test for Establishing an Ineffective Assistance of Counsel Claim
The test for establishing an ineffective assistance of counsel claim is a two-pronged one:
(1) The claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards.
(2) The clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish the second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
Mr. Meus was entitled to an evidentiary hearing on his claims of ineffective assistance of counsel if he alleged specific facts which are not conclusively rebutted in the record and which demonstrate a deficiency in trial counsel's performance that prejudiced the outcome of his trial. See Floyd v. State, 808 So.2d 175, 182 (Fla.2002) (citing Gaskin v. State, 737 So.2d 509, 516 (Fla.1999)). Upon review of the postconviction court's summary denial of Mr. Meus' motion without an evidentiary hearing, we must accept Mr. Meus' factual allegations as true to the extent that they are not refuted by the record. Id. (citing Occhicone v. State, 768 So.2d 1037, 1041 (Fla.2000)). Our review of the postconviction court's summary denial of Mr. Meus' postconviction motion is under the de novo standard. See Willacy v. State, 967 So.2d 131, 138-39 (Fla.2007).
We emphasize that the postconviction court did not conduct an evidentiary hearing on Mr. Meus' claim of ineffective assistance of trial counsel that we discuss below. Although we accept the unrefuted factual allegations of Mr. Meus' claim as true for the purposes of our review, the reader should bear in mind that Mr. Meus' trial counsel has not yet had an opportunity to address these allegations.

Discussion
We turn now to an examination of Mr. Meus' claim that his trial counsel was ineffective for omitting to interview and to call Juan Otero, the Zolfo Springs volunteer firefighter, as a witness at trial. It is well settled that in order for a defendant to state a facially sufficient claim for *711 failure to call a witness at trial, the defendant must allege: (1) the identity of the prospective witness, (2) the substance of the witness's testimony, (3) the availability of the witness to testify at trial, and (4) an explanation concerning how the omission of the witness's testimony prejudiced the outcome of the trial. See Nelson v. State, 875 So.2d 579, 582-83 (Fla.2004); Petz v. State, 917 So.2d 381, 382-83 (Fla. 2d DCA 2005). With respect to the outline of the omitted testimony, it is sufficient for the defendant to detail the substance of the exculpatory version of events to which the witness might have testified and explain the prejudice resulting to him or to her from its omission at trial. See Tyler v. State, 793 So.2d 137, 141 (Fla. 2d DCA 2001) ("Absolute certainty regarding potential testimony is not required in order to state a facially sufficient claim.").
In his postconviction motion, Mr. Meus alleged the following facts concerning Mr. Otero's potential testimony. In 2001, Mr. Otero had been a volunteer firefighter for Hardee County for approximately five years. He had responded to approximately 100 vehicular crashes. From this experience, Mr. Otero had practical knowledge concerning how accident investigators reconstructed the facts of an accident. He also had two years' experience driving a semi-tractor trailer rig similar to the one operated by Mr. Meus.
Mr. Meus alleged the following additional facts. Although Mr. Otero was off duty at the time of the crash, he was one of the first emergency personnel to reach the scene of the crash. In fact, Mr. Otero reported the crash to the appropriate authorities. Mr. Otero observed Mr. Meus climb out of his wrecked rig and spoke with him after the crash. Mr. Otero's observations of Mr. Meus after the crash led him to the assessment that Mr. Meus was not sleep-deprived. Furthermore, based on his experience as a first responder, his familiarity with the Seven Mile Point intersection, and his direct observations at the scene of the crash, Mr. Otero concluded that the path and final resting positions of Mr. Meus' rig and Ms. Moore's minivan were inconsistent with the State's theory that Mr. Meus fell asleep at the wheel.
According to the allegations of Mr. Meus' motion, the omission of Mr. Otero's testimony at trial prejudiced him in three ways. First, law enforcement officers testified at trial that Mr. Meus fell asleep after they had placed him in the back of a patrol car at the scene of the crash. The officers' testimony about the difficulty they experienced in waking Mr. Meus later that evening was critical to the State's circumstantial case that Mr. Meus was sleep-deprived and had fallen asleep at the wheel. By showing that Mr. Meus was awake and alert immediately after the crash, Mr. Otero's testimony would have cast doubt on the State's theory. In addition, Mr. Otero's testimony on this point would have provided some support for the defense explanation that Mr. Meus' apparent drowsiness after the crash stemmed from a head injury that he had sustained during the crash, not from a lack of sleep. Second, Mr. Otero's testimony would have corroborated the defense expert's conclusions about how the crash occurred, and it would have cast doubt on the accuracy of Sergeant Keen's observations and findings. Third, the trial developed as a battle of experts who were clearly aligned with one side or the other. The State's case against Mr. Meus was entirely circumstantial. Because Mr. Otero was an independent witness who was unbiased, his testimony would have been crucial to the defense. For these reasons, Mr. Meus contended in his motion that there was a reasonable probability that if the jury had heard Mr. *712 Otero's testimony, the outcome of the trial would have been different.
In denying Mr. Meus an evidentiary hearing on this claim, the postconviction court adopted the State's response to the motion. In its response, the State made three points. First, it would not be surprising if Mr. Meus were wide awake immediately after this horrifying incident. Therefore, Mr. Otero's observations about Mr. Meus' demeanor would not have helped the defense. Second, Mr. Otero was not qualified to render any testimony concerning how the crash might have happened. Third, in light of Mr. Fisher's expert opinion testimony offered on behalf of the defense, anything Mr. Otero might have had to say would have been superfluous. Therefore, the postconviction court ruled that the omission of trial counsel to call Mr. Otero did not prejudice the defense. We disagree.
Prior to trial, the State identified Mr. Otero as "F JUAN OTERO, ZOLFO SPRINGS FIRE DEPARTMENT," on the Discovery Exhibit that it filed in accordance with Florida Rule of Criminal Procedure 3.220(b). In this document, the State named Mr. Otero as a "Category A" witness on a "LIST OF PERSONS KNOWN TO HAVE INFORMATION" about the case. Assuming that trial counsel failed to interview this potential witness, his performance fell below the expected standard. If potential witnesses  available to testify at trial  may have been able to cast doubt on the defendant's guilt, the failure to investigate and call them at trial can constitute ineffective assistance of counsel. See Bulley v. State, 900 So.2d 596, 597 (Fla. 2d DCA 2004). In a case of this magnitude and complexity, trial counsel should have contacted every known witness at the scene of the crash to see if he or she had any exculpatory information. See Brown v. State, 892 So.2d 1119, 1121-22 (Fla. 2d DCA 2004) ("An attorney has a duty to make reasonable investigations in his or her cases." (citing Squires v. State, 558 So.2d 401, 403 (Fla.1990))).
Mr. Otero's observations about Mr. Meus' demeanor immediately after the crash would have been admissible in evidence to rebut the State's theory that Mr. Meus fell asleep at the wheel. See Bush v. State, 809 So.2d 107, 119-20 (Fla. 4th DCA 2002) ("A lay witness may describe a person's physical appearance using opinions that do not require special skill, so long as the opinions are based upon observations of the witness." (citing Fino v. Nodine, 646 So.2d 746, 749 (Fla. 4th DCA 1994))). The credibility and weight to be given to this evidence would have been for the jury to determine. Additionally, Mr. Otero's lack of formal training in accident reconstruction would certainly not have precluded him from testifying about what he perceived at the scene. Mr. Meus alleged that Mr. Otero's observations would have conflicted with Sergeant Keen's findings. We agree that Mr. Otero did not appear to qualify as an expert in the field of accident investigation and reconstruction. See Tarin v. City Nat'l Bank of Miami, 557 So.2d 632, 633-34 (Fla. 3d DCA 1990). But we also think that the postconviction court could not have determined the extent to which Mr. Otero might have been able to testify in terms of inferences and opinions about his observations at the scene until it had actually heard Mr. Otero's testimony. § 90.701(1), Fla. Stat. (2003); cf. Zwinge v. Hettinger, 530 So.2d 318, 323 (Fla. 2d DCA 1988) (determining that the trial court did not abuse its discretion in excluding the proffered testimony of three eyewitnesses concerning the ultimate issue of the causation of an accident; instead the jury should have been permitted to draw its own inferences and conclusions based on the eyewitnesses' testimony concerning *713 their individual observations at the scene). Finally, trial counsel's commendable effort to counter Sergeant Keen's testimony with Mr. Fisher's expert opinion evidence does not render trial counsel any less ineffective for failing to investigate and call Mr. Otero. See Currelly v. State, 732 So.2d 449, 450 (Fla. 2d DCA 1999) (holding that postconviction motion was facially sufficient where the motion alleged that trial counsel was ineffective for failing to interview certain alibi witnesses who would have corroborated the testimony of another exculpatory witness if they had been called at trial).
In a circumstantial evidence case, the State must "`present evidence from which the jury can exclude every reasonable hypothesis except that of guilt'" in order to avoid a judgment of acquittal. See Linn v. State, 921 So.2d 830, 834 (Fla. 2d DCA 2006) (quoting State v. Law, 559 So.2d 187, 188 (Fla.1989)). Accordingly, trial counsel was charged with marshalling any and all evidence that would have supported Mr. Meus' hypothesis of innocence. Mr. Meus pleaded a facially sufficient claim concerning his trial counsel's failure to investigate and present Mr. Otero as a witness. This claim is not conclusively refuted by the record. Accordingly, the trial court erred in failing to grant Mr. Meus an evidentiary hearing on this ground.

Conclusion
The postconviction court's order (with its attachments) does not demonstrate conclusively that Mr. Meus is not entitled to an evidentiary hearing on his ineffective assistance of counsel claim based on trial counsel's failure to investigate and present Mr. Otero as a witness at trial. Accordingly, we reverse the postconviction court's order to the extent that it fails to grant Mr. Meus an evidentiary hearing on this claim. In all other respects, we affirm the postconviction court's order.
Affirmed in part, reversed in part, and remanded for an evidentiary hearing.
SILBERMAN and VILLANTI, JJ., Concur.
NOTES
[1] We note the unusual circumstance that Dana Christenson, one of Ms. Moore's sisters, has filed with this court an amicus brief supporting Mr. Meus' bid for an evidentiary hearing on his postconviction claims.