985 So.2d 646 (2008)
Jose BALMORI, Appellant,
v.
STATE of Florida, Appellee.
No. 2D06-4450.
District Court of Appeal of Florida, Second District.
June 27, 2008.
*647 James Marion Moorman, Public Defender, and Robert D. Rosen, Assistant Public Defender, and Timothy J. Ferreri, Assistant Public Defender (substituted as counsel of record), Bartow, for Appellant.
Bill McCollum, Attorney General, Tallahassee, and William I. Munsey, Jr., Assistant Attorney General, Tampa, for Appellee.
WALLACE, Judge.
Jose Balmori appeals an order denying his motion for postconviction relief in which he raised ten claims of ineffective assistance of counsel. The postconviction court summarily denied two of his claims, and it denied the remaining eight claims after an evidentiary hearing. We affirm without discussion the denial of the eight claims addressed at the evidentiary hearing. However, we reverse the summary denial of the other two claims, and we remand this case to the postconviction court for reconsideration of these two claims.

The Underlying Conviction and Theory of Defense
In 2003, a jury found Mr. Balmori guilty of attempted trafficking in heroin over twenty-eight grams but less than thirty kilograms. See §§ 893.135(1)(c)(1)(c), 777.04(4)(c), Fla. Stat. (2002). The trial court sentenced him to eight years in prison. This court subsequently affirmed Mr. Balmori's conviction but instructed the trial court to correct a scrivener's error in the written judgment that incorrectly identified the offense as a first-degree felony when it should have been designated as a second-degree felony. Balmori v. State, 924 So.2d 7 (Fla. 2d DCA 2005).
At trial, Mr. Balmori admitted that on September 6, 2002, law enforcement apprehended him as he was returning to Sarasota County after a day trip to Miami. However, he denied any knowledge of the 130 grams of heroin that the officers found inside a white plastic grocery bag sitting on the passenger seat of his car. Defense counsel suggested in his closing argument that the heroin may have been "planted" without Mr. Balmori's knowledge either by law enforcement officers or by some other party using Mr. Balmori as an unwitting "mule" to transport the contraband.
According to Mr. Balmori, he did not travel to Miami and back to transport heroin as the State contended. Instead, his trip to Miami was for a legitimate purpose, i.e., to pick up a mechanical part for his semi-trailer truck. Mr. Balmori explained that he could purchase the part from a junkyard salvage shop in Miami for $700 less than the same part would cost him in Sarasota or Tampa. Mr. Balmori's testimony that the car had been in an automobile repair shop during the week before his *648 trip to Miami lent some plausibility to the theory that the heroin had been planted in his car. Mr. Balmori claimed that it was entirely possible for him to be unaware that a contraband substance was in a plastic bag on the passenger seat next to him because he regularly left scattered about the vehicle the plastic supermarket bags in which his wife packed his daily lunches. This somewhat novel explanation for the unwitting transport by automobile of a contraband substance might be characterized as "the messy car defense."

The Postconviction Motion
In February 2006, Mr. Balmori filed his motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. In claims number three and five of the motion, Mr. Balmori alleged that he had specifically informed his trial counsel of detailed facts, evidence, and potential witnesses that would have supported his claims and lent additional credibility to his explanation of how he could have remained unaware of the presence of heroin in his car. This information included a work order from the repair shop showing the dates and times during which the vehicle was at the shop. Mr. Balmori also alleged that he explained to his trial counsel that the shop employees could have testified about what personsincluding a confidential informant who worked at the shop had access to his vehicle during this time. Mr. Balmori theorized that anyone with access to the shop, including the confidential informant, could have put the heroin in his car without his knowledge. Mr. Balmori also alleged that he had given his trial counsel the name and location of the junkyard salvage shop in Miami and the actual receipt for the purchase of the truck part. This receipt recorded the date and time of purchase, as well as the code number of the salvage shop employee responsible for selling Mr. Balmori the truck part. This particular employee had also given Mr. Balmori instructions about where he could pick up the part.
Mr. Balmori alleged that this evidence would have bolstered his credibility with the jury because it would have corroborated his claim "that he did not go to Miami for drugs." Moreover, Mr. Balmori claimed that this evidence would have supported the defense theory that the person who had set him up as a "mule" was in fact the confidential informant who worked at the repair shop and who had directed Mr. Balmori to the junkyard salvage shop at a prearranged time. In accordance with his trial testimony, Mr. Balmori claimed that he and other family members regularly tossed empty shopping bags in the car, and it "was an everyday natural thing for him to see" numerous shopping bags in the car "and never imagine[ ] that an illegal substance was [inside]."
Mr. Balmori further asserted in his postconviction motion that despite having received all of this information which would likely have led to evidence supporting his "messy car defense," his trial counsel provided ineffective assistance when he failed to investigate any of the leads and failed to interview any of the potential witnesses. According to Mr. Balmori, if trial counsel had investigated his claims and presented this evidence and witness testimony at trial, there was a reasonable probability that the jury would have acquitted him.

The Denial of Relief
On February 9, 2006, the postconviction court summarily denied claims three and five of Mr. Balmori's motion. The postconviction court noted that Mr. Balmori himself had "testified at trial to the same information as the proposed testimony" and attached to its order a copy of the pages from the trial transcript containing Mr. Balmori's testimony. The postconviction court ruled that "the failure by counsel *649 to present cumulative evidence would not constitute ineffective assistance of counsel." On this basis, the postconviction court concluded that Mr. Balmori was not entitled to any relief on claims three and five of his motion. The postconviction court cited Whitfield v. State, 923 So.2d 375 (Fla.2005), in support of its ruling.

The Test for Establishing a Claim of Ineffective Assistance of Counsel
The legal standard for establishing a claim of ineffective assistance of counsel is a two-pronged one:
[(1) T]he claimant must identify particular acts or omissions of the lawyer that are shown to be outside the broad range of reasonably competent performance under prevailing professional standards. [(2) T]he clear, substantial deficiency shown must further be demonstrated to have so affected the fairness and reliability of the proceeding that confidence in the outcome is undermined.
Maxwell v. Wainwright, 490 So.2d 927, 932 (Fla.1986) (citing Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984)). To establish this second prong, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694, 104 S.Ct. 2052. In this context, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." Id.
Under Florida Rule of Criminal Procedure 3.850(d), a postconviction defendant who alleges ineffective assistance of counsel is entitled to an evidentiary hearing on his or her claims if the defendant alleges specific facts which are not conclusively rebutted in the record and which demonstrate a deficiency in trial counsel's performance that prejudiced the outcome of the trial. See Floyd v. State, 808 So.2d 175, 182 (Fla.2002). When a postconviction court summarily denies a defendant's motion without an evidentiary hearing, an appellate court "must accept a defendant's factual allegations as true to the extent they are not refuted by the record." Id. (citing Occhicone v. State, 768 So.2d 1037, 1041 (Fla.2000)). We review the postconviction court's summary denial of a rule 3.850 motion under the de novo standard. See Willacy v. State, 967 So.2d 131, 138-39 (Fla.2007).

Discussion
A rule 3.850 motion should not be summarily denied unless "the motion, files, and records in the case conclusively show that the movant is entitled to no relief." Fla. R.Crim. P. 3.850(d). In Mr. Balmori's postconviction motion, he alleged both the failure to investigate evidencei.e., business recordsand the failure to locate and interview witnesses whose testimony would have corroborated his theory of defense. The trial court denied these claims on the theory that the documentary evidence and witness testimony would have been cumulative to Mr. Balmori's own testimony, citing Whitfield, 923 So.2d 375. We disagree with this conclusion.
We conclude that the trial court's reliance on Whitfield was misplaced for two reasons. First, Whitfield addressed a postconviction claim that was denied after an evidentiary hearing. Id. at 380. Thus neither the circuit court nor the appellate court was required to accept the facts stated in the defendant's motion as true unless refuted by the written record. Instead, they were able to evaluate the defendant's claims against the testimony presented at the postconviction evidentiary hearing. Second, the postconviction court in Whitfield considered the defendant's claim that trial counsel was ineffective for failing to call four witnesses who should have been called to corroborate his voluntary intoxication *650 defense. Id. The Supreme Court of Florida found that at trial, "defense counsel presented significant evidence of [the defendant's] drug use problems through several witnesses, including their expert witness, . . . police officers, and [a] lay witness." Id. (emphasis added). In Whitfield, the defendant claimed that trial counsel should have called additional witnesses to testify. The testimony of these additional witnesses was cumulative to the testimony of other witnesses who were called and not to the testimony of the defendant himself. Thus Whitfield does not stand for the proposition that trial counsel cannot be found to be ineffective for failing to call witnesses whose testimony would have corroborated the defendant's testimony concerning facts essential to establish a defense to the offense or offenses charged. This reading of Whitfield is confirmed by the two cases that the Supreme Court of Florida chose to discuss in support of its holding on this point. Id. Cole v. State, 841 So.2d 409 (Fla.2003), and Marquard v. State, 850 So.2d 417 (Fla. 2002), both addressed postconviction claims that trial counsel was ineffective for failing to call additional witnesses who would have provided testimony similar to that already given by at least one other witness, not just by the defendant.
Here, Mr. Balmori was the only witness to testify for the defense. At trial, the State had to prove beyond a reasonable doubt that Mr. Balmori was "knowingly in actual or constructive possession" of the heroin found in his car. § 893.135(1)(c)(1) (emphasis added). Specifically, the State had to prove that he had "guilty knowledge" of the heroin's presence.[1]Garcia v. State, 901 So.2d 788, 793 (Fla.2005). Because Mr. Balmori's knowledge of the heroin's presence was certainly the primary disputed issue at trial, his credibility with the jury was essential to his defense.
We find that, taking all of the allegations in claims three and five of Mr. Balmori's postconviction motion as true where not refuted by the record, providing independent business records would have corroborated his claims that he drove to Miami for a legitimate reason and that others had access to his vehicle immediately before the trip. To be sure, this documentary evidence may have been duplicative of the content of Mr. Balmori's testimony, but it was not duplicative of its evidentiary value. Instead, the force of this evidence would have been incremental in value to Mr. Balmori's testimony. Similarly, the testimony of the witnesses who were not interviewed or called to testify by counselespecially where they were independent of Mr. Balmoriwould likely have incrementally increased his credibility with the jury. Cf. Meus v. State, 968 So.2d 706, 711 (Fla. 2d DCA 2007) (observing that the testimony of an independent and unbiased witness that would have corroborated the testimony of the defense's paid expert "would have been crucial to the defense"); Peals v. State, 744 So.2d 1181, 1182 (Fla. 2d DCA 1999) (finding that the defendant may have been prejudiced by counsel's failure to corroborate the exculpatory testimony of a witness[2] whom "the jury may have been disinclined to believe" because she admitted at trial that she had initially lied to the police). *651 Because we are required to accept Mr. Balmori's allegations as true for the purpose of this review, the corroborating evidence and testimony could possibly have provided the incremental amount of reasonable doubt necessary to win an acquittal.
In sum, we conclude that the documents and witnesses Mr. Balmori allegedly asked his trial counsel to investigate would not have been cumulative to Mr. Balmori's trial testimony. It follows that the postconviction court erred when it summarily denied Mr. Balmori's claims that his trial counsel provided ineffective assistance in failing to investigate evidence and witnesses that would have supported Mr. Balmori's defense. Accordingly, we reverse the postconviction court's order to the extent that it denied Mr. Balmori any relief on claims three and five of his motion, and we remand for the postconviction court to reconsider these claims. Upon remand, the postconviction court shall determine if the case files and records conclusively refute claims three and five on other grounds. If they do not, the postconviction court shall hold an evidentiary hearing on claims three and five only. In all other respects, we affirm the postconviction court's order denying Mr. Balmori's rule 3.850 motion.
Affirmed in part, reversed in part, and remanded for further proceedings.
WHATLEY and LaROSE, JJ., Concur.
NOTES
[1] Since the date of the alleged offense was September 6, 2002, the State was not required to prove that Mr. Balmori had knowledge of the heroin's illicit nature. See Garcia v. State, 901 So.2d 788, 792 n. 1 (Fla.2005) (citing § 893.101, Fla. Stat. (2002), which went into effect on May 13, 2002); Whitehurst v. State, 852 So.2d 902, 903 (Fla. 2d DCA 2003).
[2] The witness in Peals was the alleged victim who had initially accused the defendant of attacking her but then exonerated him in her trial testimony. The Peals court found that because of the victim's shifting version of events, "the jury may have been disinclined to believe her testimony." Id. Thus, the court found that the defendant had presented a facially sufficient claim of ineffective assistance of counsel when he alleged that trial counsel failed to corroborate the victim's testimony that was favorable to the defense by failing to investigate, discover information, and depose medical personnel on the results of the victim's toxicology reports. The Peals court specifically rejected the postconviction court's conclusion that corroborating testimony by medical personnel would have been cumulative to the victim's testimony about her own intoxication. Id.